UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| EDDIE SALAZAR, | ) | CASE NO. 1:09-cv-02264-MJS (PC) |
| Plaintiff, | ) | ORDER DISMISSING PLAINTIFF'S COMPLAINT WITH LEAVE TO AMEND |
| v. | ) | (ECF No. 1) |
| SULLIVAN, et al., | ) | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |
| Defendants. | ) | |

**SCREENING ORDER**

**I.   PROCEDURAL HISTORY**

On December 31, 2009, Plaintiff Eddie Salazar, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff has consented to Magistrate Judge jurisdiction. (ECF No. 5.) Plaintiff's Complaint is now before the Court for screening.

**II.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief

1

against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

### III. SUMMARY OF COMPLAINT

The Complaint alleges that the following named Defendants violated Plaintiff's constitutional rights: (1) Sullivan, former Warden, California Correctional Institution, Tehachapi ("Tehachapi"); (2) Gonzales, current Warden, Tehachapi; (3) T. Schwartz, Director; (4) M. Carrasco, Chief Deputy Warden; (5) D. Pierce, Correctional Counselor; (6) M. Pailo, Correctional Counselor; and (7) John Does one through fifty.

Plaintiff alleges the following:

On December 5, 2006, Plaintiff was placed in segregated housing pending a hearing after being attacked. (Compl. at 5.) At the hearing on December 14, 2006 Defendant Carrasco asked Plaintiff if he was ready for protective custody. Defendant Carrasco

reminded Plaintiff that his attackers had tried to kill him, that he thus owed no loyalty to anyone, and that there was no "going back" now. Defendant was trying to persuade Plaintiff to provide information regarding illegal activity. (Id.) That same day an interviewer from the Institution's Gang Investigator unit recommended to Plaintiff that he volunteer for protective custody and provide information. Plaintiff declined; the interviewer suggested negative consequences might ensue. (Id. at 6.)

On March 15, 2007 there was another hearing to review Plaintiff's segregated housing status. Again Plaintiff was asked to elect protective custody and provide information of illegal activity. Plaintiff suggested housing alternatives to protective custody. Defendant Carrasco responded that "if [Plaintiff] doesn't choice [sic] Sensitive Need Yard 'SNY' we will recommend . . . indeterminate [placement in the Segregated Housing Unit ('SHU')]." (Id.) At the following hearing on June 30, 2007, Defendant Carrasco delivered the same ultimatum to Plaintiff. "Plaintiff responded I don't have any relevant information and can be housed at certain institutions and facilitys [sic] that I supplied [the hearing panel] with. And reiterated I have no safety concerns." (Id.) The hearing adjourned until the next ninety day review of Plaintiff's housing status. (Id.)

On October 25, 2007 Plaintiff was transferred to the SHU without notification or hearing. Seven days later at his initial SHU review, the committee advised Plaintiff that the Departmental Review Board had concluded that Plaintiff's gang activity and disciplinary history warranted his placement in the SHU. (Id. at 7.) Plaintiff disputed these justifications and asked for an opportunity to formally challenge the decision. The "Committee stated that 'its, to late' . . ." and that Plaintiff "should of cooperated and chosen [protective custody] and now you will serve this SHU term [indefinitely]." (Id.)

3

Plaintiff has undergone multiple committee reviews on his SHU placement. Each time the Committee endorsed continuing SHU housing without making an individualized finding as to whether Plaintiff posed a threat to himself, others, or the security of the institution. (Id. at 8.) The Defendants placed Plaintiff in the SHU to harass him and retaliate against him for not volunteering information about illegal activity. (Id. at 7, 8.)

Defendant Dailo has refused to consider mitigating evidence. (Id. at 12.) Plaintiff has submitted multiple appeals which have been ignored by Defendants Sullivan and Carrasco. (Id.) Defendants Sullivan and Gonzales failed to train subordinate staff regarding harassment and retaliation. (Id. at 13.) The Defendants applied "underground" regulations in violation of the Administrative Procedure Act to assign Plaintiff an indeterminate SHU term. (Id.)

Plaintiff alleges that the aforementioned conduct violated his Fourteenth Amendment Due Process rights and that conditions in the SHU violate the Eighth Amendment's prohibition against cruel and unusual punishment. (Id. at 14-16.) Plaintiff, who is Hispanic, further alleges that Defendants discriminate against Hispanics by presuming Hispanics' misconduct is gang-elated. The Defendants do not make the same presumption about other ethnic groups. As a result, Hispanics are disproportionately given SHU terms in violation of Equal Protection. (Id. at 13, 14.) The Court will address these claims below.

## IV. ANALYSIS

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.

4

See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

### A.     Section 1983 Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute clearly requires that there be an actual connection or link between the actions of the defendants and the unconstitutional deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official

5

cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff does not mention how Correctional Officer D. Pierce participated in the alleged violation of Plaintiff's rights. He is not mentioned at all in the body of the Complaint.

The Complaint also lacks factual allegations to sufficiently connect the other Defendant's to the alleged constitutional violations. The Court will grant Plaintiff leave to amend his complaint in this regard. To do so he needs to set forth sufficient truthful facts showing that each, acting under color of law, personally took some action that violated his constitutional rights. Mere supervision of individuals responsible for a violation is not enough.

B.      **John Does 1-50**

"John Doe" defendant liability must be properly alleged. A plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," or otherwise distinguish each defendant, e.g., "Gang Unit Interviewer John Doe," so that every John Doe refers to a different specific person. Plaintiff also must identify how each such named defendant, including those named as Doe, is liable for a constitutional violation. Dempsey v. Schwarzenegger, 2010 WL 1445460, *2 (N.D. Cal. Apr. 9, 2010); Schrubb v. Tilton, 2009 WL 3334874, *2 (N.D. Cal. Oct. 14, 2009).

Plaintiff alleges fifty John Does participated in the constitutional violations but then often refers to Defendants collectively without any indication as to whether some or all of the Does played a role in the violation. There is only one instance in the Complaint where an individual's conduct is described and that person's identity is not specified. (Plaintiff describes a December 14, 2006 interview where someone identified as "the interviewer" alluded to adverse consequences ensuing if Plaintiff did not cooperate.) The Court cannot determine from the Complaint if or how the various Doe Defendants are alleged to have violated Plaintiff's rights.

In order to give Plaintiff an opportunity to link these Doe Defendants to the alleged acts or omissions that violated Plaintiff's federal rights, the Court will grant leave to amend. In his amended complaint, Plaintiff shall either name the defendants involved or list the number of Doe defendants involved in each wrongful act. If Plaintiff can only list these defendants as John Doe, Plaintiff should allege specific acts attributed to each of these Doe defendants, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y." Alexander v. Tilton, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

### C. Due Process

The Complaint alleges that Plaintiff was detained in the SHU for an indeterminate period without due process in violation of the Fourteenth Amendment. The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. Id. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement,

7

id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Based on Plaintiff's general allegations regarding harsh SHU conditions, the Court will assume, at the screening stage, the existence of a liberty interest in being free from an indeterminate SHU term. See Wilkinson, 545 U.S. at 223–24 (finding a liberty interest in avoiding indefinite confinement in Ohio's "Supermax" facility). The inquiry then becomes what process is due. Id. at 224.

Assignment to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100–01 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. at 472). In addition to these minimal protections, there must be "some evidence" supporting the decision. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)). Although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia

of reliability.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

Liability under section 1983 requires a showing of personal involvement, Iqbal, 129 S.Ct. at 1949, and it is only the critical decision makers in the process to assign Plaintiff to the SHU who may be held liable for denial of due process.  See e.g., Perez v. Woodford, 2010 WL 3943536, *7 (E.D. Cal. Oct.1, 2010); Avina v. Medellin, 2010 WL 3516343, *5–6 (E.D. Cal. Sept. 3, 2010); Madrid v. Gomez, 889 F.Supp. 1146, 1276 (N.D. Cal. 1995).

Plaintiff alleges that he was assigned to an indeterminate SHU term without any opportunity to be heard as to the justifications for placing him there.  Such a claim, if true, could support a claim under section 1983. However, Plaintiff's claim in this regard is potentially inconsistent with pleadings indicating he may have attended hearings relating to his housing status.  Plaintiff will be given leave to amend and clarify this possible inconsistency.  In his amended pleading, he must specifically identify hearings at which decisions were made to place and/or keep him in SHU indeterminately without giving him adequate notice, an opportunity to be heard, and periodic review.  Bruce, 351 F.3d at 1287.

Moreover, in his amended complaint, Plaintiff must be clear as to who made the decision to place him in the SHU and who denied him the due process protections to which he was entitled.  Defendant Carrasco told Plaintiff that if he did not cooperate, Defendant Carrasco would recommend an indeterminate SHU term to the Departmental Review Board. (Compl. at 6.)  The unknown interviewer from the Gang unit made a similar threat. (Compl. at 5, 6.)  Thus although the facts suggest that Defendant Carrasco and the Gang unit interviewer made recommendations, there is no allegation that they were among those who had the power and authority to, and did, assign Plaintiff to the SHU.  None of

the Defendants are identified as members of the Departmental Review Board who "reviewed his case factor and imposed indeterminate SHU . . . ." (Id. at 7.)

### D. Violations of State Law

Plaintiff cites to various sections of Title 15 of the California Code of Regulations[1] throughout his Complaint. These sections generally address the procedures by which prisoners are to be placed and removed from the SHU. It is not clear whether Plaintiff is attempting to state a separate claim based on the violation of these regulations. If he is, the Court is unaware of any authority creating a private right of action for violation of Title 15. Davis v. Kissinger, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb.3, 2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009). "By contrast, the Court has found authority stating that the 'statutory language does not support an inference that there is a private right of action' under Title 15." Parra v. Hernandez, 2009 WL 3818376, *8 (S.D. Cal. Nov. 13, 2009) (quoting Chappell v. Newbarth, 2009 WL 1211372, at *8 (E.D. Cal. May 1, 2009); see also Lee v. Scribner, 2009 WL 1211400, at *11 (E.D. Cal. May 1, 2009). Thus, this claim shall be dismissed with prejudice.

### E. Retaliation

Next, Plaintiff alleges generally that the Defendants assigned Plaintiff to the SHU in retaliation for his refusal to provide information of illegal activity. By alleging that he has no safety concerns, no disciplinary record, and knows nothing about illegal activity, he implies there is no other justification for his placement in SHU.

Allegations of retaliation against a prisoner's First Amendment rights to speech or

---

[1] Cal. Code. Regs., tit. 15, §§ 3335(a), 3339(a), 3341.5, 3375(f)(1)(c), 3375(e), 3023, 3312(a)(3), 3341.5(c)(a)(1).

10

to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal ." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Here, Plaintiff indicates he is unaware of any illegal activity or safety concerns. The fact that Defendants recommended that Plaintiff be placed in the SHU because they did not believe him is not violative of the First Amendment. The Court is unaware of any case where a prisoner's refusal to speak was held to be protected conduct. See, e.g., Dixon v. Gonzales, 2009 WL 3416005, *3 (E.D. Cal. Oct. 21, 2009) (The right to not speak is not protected conduct.) Protected conduct as contemplated by the First Amendment in the prison context has included filing of prison grievances, Bruce, 351 F.3d at 1288, giving legal assistance to other inmates, Rizzo, 778 F.2d at 531, and access to the courts, Lewis v. Casey, 518 U.S. 343, 346 (1996). Each of those cases involved conduct that had a chilling effect on speech. This case is distinguishable because Plaintiff has chosen to not speak and thus there is no speech to protect.

**F.    Eighth Amendment**

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants assigned him to an indeterminate term in the SHU.

The Eighth Amendment protects prisoners from "cruel and unusual punishment."

11

U.S. Const. amend. VIII.  To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Hoptowit, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety.  Farmer, 511 U.S. at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety . . . ."  Id. at 837.

Plaintiff alleges that "[r]etention . . . in the SHU is violative of the . . . prohibition of cruel and unusual punishment."  (Compl. at 16.)  Plaintiff's Eighth Amendment claim is based only on the nature of SHU housing generally; he does not allege anything about it other than it is a SHU and that SHU housing is in and of itself harsh.  A prolonged sentence in administrative segregation does not in of itself constitute cruel and unusual punishment in violation of the Eighth Amendment. See, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual

12

punishment); Toussaint v. Yockey, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984) (more than usual hardships associated with administrative segregation required to state 8th Amendment claim). Even the admittedly harsh conditions in the SHU do not impose cruel and unusual punishment on ordinary prisoners such as Plaintiff. See Madrid, 889 F.Supp. at 1267. Plaintiff does not allege that he is experiencing anything other than normal conditions in the SHU. Thus, the Complaint does not state a cognizable claim.

The Court will grant Plaintiff leave to amend his Eighth Amendment claim. In order to state a cognizable claim, Plaintiff must allege additional truthful facts establishing that Defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff's safety. Merely being housed in the SHU will not sustain a claim.

### G.    Fourteenth Amendment Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff can establish an equal protection claim by showing that the defendant has intentionally discriminated against him on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. Cleburne, 473 U.S. at 440. The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a compelling government interest. Grutter v. Bollinger, 539 U.S.

306, 326 (2003).

Plaintiff alleges that he is Hispanic and that the Defendant's are discriminating against him based on his race. (Compl. at 13). Race and ethnicity are suspect classes that trigger strict scrutiny. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race"). The Complaint alleges that the Defendants are attributing gang activity to Plaintiff because of his race even though his activity is not gang related. Plaintiff alleges that the same misconduct committed by a Hispanic inmate and a non-Hispanic inmate results in Defendants assigning a gang label only in the former case and solely on the basis of race. (Compl. at 13.) These allegations are sufficient to state a cognizable Equal Protection claim. See Cranford v. Nickels, 2010 WL 2991683, *3 (E.D. Cal. Jul. 29, 2010) (Plaintiff's allegation of disparate treatment on the basis of his race states a cognizable equal protection claim). However, Plaintiff's Complaint still fails because it does not explain how any single Defendant participated in and perpetrated this violation of his Fourteenth Amendment rights. Thus, Plaintiff has not stated a cognizable claim. Monell, 436 U.S. at 658.

The Court will grant Plaintiff an opportunity to amend this claim. In order to state a cognizable Equal Protection claim, Plaintiff must provide truthful factual allegations demonstrating that the Defendants acted with an intent or purpose to discriminate against him based upon membership in a protected class. Lee, 250 F.3d at 686. Conclusory allegations of Defendants' involvement is not enough, Plaintiff must include facts that link each Defendant to the constitutional violation. Monell, 436 U.S. at 658.

///

## V. <u>CONCLUSION AND ORDER</u>

Plaintiff's Complaint does not state a claim for relief under section 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, he must demonstrate that the alleged wrongful acts resulted in a deprivation of his constitutional rights. <u>Iqbal</u>, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" <u>Id.</u> at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. <u>Jones</u>, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the

15

speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is hereby ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his Complaint filed December 31, 2009;

2. Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim and failure to prosecute.

IT IS SO ORDERED.

Dated:     October 4, 2011              /s/ *Michael J. Seng*
ci4d6                                   UNITED STATES MAGISTRATE JUDGE