# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE SALAZAR, | CASE NO. 1:09-cv-02264-MJS (PC) |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |
| v. | |
| SULLIVAN, et al., | (ECF No. 10) |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |

**SCREENING ORDER**

I.  **PROCEDURAL HISTORY**

On December 31, 2009, Plaintiff Eddie Salazar, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff consented to Magistrate Judge jurisdiction. (ECF No. 6.)

Plaintiff's Complaint (ECF No. 1) was screened and dismissed, with leave to amend, on October 4, 2011, for failure to state a cognizable claim. (ECF No. 9.) Plaintiff's First Amended Complaint is now before the Court for screening. (ECF No. 10.)

///

1

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

## III. SUMMARY OF COMPLAINT

The Complaint alleges the following named Defendants violated Plaintiff's constitutional rights: (1) Sullivan, former Warden, California Correctional Institution, Tehachapi ("Tehachapi"); (2) Gonzales, current Warden, Tehachapi; (3) T. Schwartz, Deputy Director; (4) M. Carrasco, Chief Deputy Warden; (5) Pierce, Correctional Counselor; (6) Dailo, Correctional Counselor; (7) John Doe # 1, Institution Gang Investigator ("IGI") Sgt.; (8) John Doe # 2, Correctional Counselor; (9) John Doe # 3,

Facility Captain; (10) John Doe # 4, Facility Captain; and (11) John Doe # 5, Chief Classification Services Unit.

Plaintiff alleges the following:

On December 5, 2006, after being attacked, Plaintiff was placed in segregated housing pending a hearing. (Compl. at 4.) On December 10, 2006, Plaintiff attended a committee hearing discussing whether he needed to stay in segregated housing. (Id.) Plaintiff opined that the attack resulted from a simple misunderstanding. Defendant Carrasco, a committee member, asserted that the attack was related to illicit activity. (Id.) Carrasco issued Plaintiff an ultimatum: Plaintiff could either voluntarily enter protective custody and provide information regarding illegal activity at Tehachapi (i.e., debrief) or remain in segregated housing and likely be transferred to the Security Housing Unit ("SHU"). Plaintiff's desire to be placed back into the general prison population was not an option. (Id. at 5.)

Plaintiff was interviewed by Defendant John Doe # 1, IGI Sgt. on December 14, 2006. When Plaintiff continued to maintain that the attack was merely an incidental fight, Doe # 1 stated that unless Plaintiff debriefed, Doe # 1 would report Plaintiff as uncooperative and "negative consequences" would result. (Id. at 5, 6.)

On March 15, 2007, Plaintiff attended a committee hearing and pled his case. He felt that further retention in administrative segregation would be unhealthy. He argued that he could function at other facilities without incident. Carrasco informed Plaintiff that he was being "referred to the Departmental Review Board (DRB) for an indeterminate [SHU] program for refusing to coorperate [sic] with investigation and not desiring protective custody." (Id. at 7.) The committee stated that approval of a SHU term would take place

at the Departmental Review Board and could take some time. (Id.)

Plaintiff thereafter attended at least three more committee hearings. Defendants Carrasco, John Doe # 3, and John Doe # 2 verbally abused Plaintiff by repeatedly referring to their authority and implying that Plaintiff was withholding information of illicit activity. (Id. at 8.) These Defendants advised Plaintiff that his objections should be forwarded to another agency because the committee no longer had Plaintiff's "case factor." (Id.)

On or about October 31, 2007, Plaintiff was transferred to the SHU and went before its committee for orientation. "During the orientation committee hearing the members addressed Plaintiff that he was issued a indeterminate SHU term by Departmental Review Board (DRB) on grounds of potential gang activity, disciplinary history behind being assulted [sic] and hispanic culture ideoligies [sic] that the assault will be exploiting the inmate to these activities to gain back favor with hispanics." (Id. at 9.) The committee refused to hear Plaintiff's protest because a final decision had been made by the Departmental Review Board and the SHU hearing was for orientation purposes only. (Id.)

Defendant Dailo, Plaintiff's housing counselor in the SHU, repeatedly rebuffed Plaintiff's objections to his continued housing in the SHU and told Plaintiff to stop complaining. (Id. at 10, 11.) Plaintiff attended a committee hearing on April 30, 2008, and attempted to address the basis relied upon by the DRB for his indeterminate SHU term. John Doe # 4 had Plaintiff removed from the hearing because he was not prepared to debrief. (Id. at 11.) Defendant Pierce later informed Plaintiff that Plaintiff had upset someone because it appeared Plaintiff would remain in the SHU. (Id. at 12.)

Plaintiff does not specifically identify which of his constitutional rights were violated.

4

On pages thirteen through seventeen of the First Amended Complaint each of three counts incorporate the factual allegations of the amended complaint. The Court interprets Plaintiff's pleading as intending to allege violations of his Eighth Amendment rights and rights to Due Process and Equal Protection.

## IV. ANALYSIS

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

### A. Section 1983 Linkage Requirement

Plaintiff alleges that Wardens Sullivan and Gonzales were responsible for, and had general knowledge of, prison operations. Their failure to investigate "incidents" and

5

discipline other Defendants is the basis for their alleged liability.  (Compl. at 13.)

In the prior screening order, Plaintiff was advised that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  Iqbal, 129 S.Ct. at 1948; Monell v. Department of Social Services, 436 U.S. 658 (1978).

To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent them, or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff alleges that the Wardens had "common knowledge of the operations of the prison," (Compl. at 13) but does not claim that either Sullivan or Gonzales knew of, or participated in, the specific alleged violations.  Accordingly, Plaintiff's claims against Defendants Sullivan and Gonzales are dismissed.  Since Plaintiff was advised of what would be necessary to pursue supervisorial liability and was unable to amend to properly so plead, no useful purpose would be served in granting further leave to amend in this regard.  Accordingly, the dismissal as to these two Defendants is with prejudice.

**B.    Eighth Amendment**

Plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual

6

punishment was violated. The Eighth Amendment protects prisoners from "cruel and unusual punishment." U.S. Const. amend. VIII. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint, 801 F.2d at 1107; Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit, 682 F.2d at 1250-51; Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmate's safety. Farmer, 511 U.S. at 834. The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety . . . ." Id. at 837.

The Court cannot with certainty identify the bases for any cognizable Eighth Amendment claim. At times it appears that Plaintiff is asserting that Defendants Carrasco, Dailo, Pierce, and Does one through four "intentionally harass[ed]" Plaintiff as evidenced by their "statements to Plaintiff during committee hearings, interviews, and in contact with Plaintiff . . . ." (Id. at 13, 14).

"'Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation . . . .'" Whitley v. Lopez, 2011 WL 5101944, *3 (E.D. Cal. Oct. 25, 2011)(citing

7

Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)). Verbal harassment is not a sufficiently serious deprivation to satisfy the first element of Plaintiff's Eighth Amendment claim. Thus, to the extent Plaintiff wishes to assert such a claim, it can not stand and is hereby dismissed with prejudice.

Later in his pleading, Plaintiff seems to renew his allegations that conditions in the SHU amount to cruel and unusual punishment. (Id. at 14). The Court is unable to find therein any basis for a constitutional violation. Plaintiff was instructed in the Court's previous screening order that SHU conditions alone do not satisfy the sufficiently serious element of an Eighth Amendment claim. "Merely being housed in the SHU will not sustain a claim." (ECF No. 9 at 13.) Even a prolonged sentence in administrative segregation does not in of itself constitute cruel and unusual punishment in violation of the Eighth Amendment. See, e.g., Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment); Toussaint v. Yockey, 722 F.2d 1490, 1494 n. 6 (9th Cir. 1984) (more than usual hardships associated with administrative segregation required to state 8th Amendment claim). Even the admittedly harsh conditions in the SHU do not impose cruel and unusual punishment on ordinary prisoners such as Plaintiff. Madrid v. Gomez, 889 F.Supp. 1146, 1276 (N.D. Cal. 1995).

Plaintiff does not allege that he is experiencing anything other than standard SHU conditions. He has not satisfied the first element of an Eighth Amendment claim. Accordingly, Plaintiff's claim is dismissed, and, for the same reasons as given in connection with the preceding calim, it is dismissed with prejudice.

///

## C. Due Process

Count two alleges that Defendants Carrasco and John Doe # 4 deprived Plaintiff of fair and impartial hearings leading up to his indeterminate SHU sentence. (Compl. at 15.) The Court will analyze these claims as if designed to assert due process violations.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. Id. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Id. at 222–23 (citing Sandin v. Conner, 515 U.S. 472, 481–84 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Id. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Based on Plaintiff's general allegations regarding harsh SHU conditions, the Court will assume, at the screening stage, the existence of a liberty interest in being free from an indeterminate SHU term. See Wilkinson, 545 U.S. at 223–24 (finding a liberty interest in avoiding indefinite confinement in Ohio's "Supermax" facility). The inquiry then becomes what process is due. Id. at 224.

Assignment to the SHU is an administrative measure rather than a disciplinary

measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100–01 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. at 472).  In addition to these minimal protections, there must be "some evidence" supporting the decision. Id. (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)).  Although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

Liability under section 1983 requires a showing of personal involvement, Iqbal, 129 S.Ct. at 1949.  Only the critical decision makers in a process depriving Plaintiff rights may be held liable for denial of due process. See e.g., Perez v. Woodford, 2010 WL 3943536, *7 (E.D. Cal. Oct.1, 2010); Avina v. Medellin, 2010 WL 3516343, *5–6 (E.D. Cal. Sept. 3, 2010); Madrid, 889 F.Supp. at 1276.

Defendant Carrasco and John Doe # 4 were not the critical decision makers in the process assigning Plaintiff to the SHU.  Defendant Carrasco presided over approximately five hearings between December 10, 2006 and Plaintiff's transfer to the SHU on October 31, 2007.  Plaintiff's alleges that Carrasco referred his case to the Departmental Review Board, the body that approved SHU assignments.  (Compl. at 7.)  Plaintiff was informed by the SHU orientation committee that the Departmental Review Board had in fact made the decision to assign Plaintiff to the SHU.  (Id. at 9.)  John Doe # 4 was a committee member assigned to periodically review Plaintiff's housing status.  Plaintiff does not allege

10

that either Carrasco or John Doe # 4 was a member of the Departmental Review Board.

The previous screening order instructed Plaintiff that given such facts, only members of the Departmental Review Board could be proper defendants.  Thus Plainitff can not assert a claim for violation of his due process rights against Carrasco and John Doe # 4.  Such claims are dismissed with prejudice.  Again, Plaintiff was advised as to what needed to be pled to enable him to proceed on a claimed due process violation.  Even though he took the opportunity to amend and had the Court's guidance in doing so, he has again failed to state a claim.  No useful purpose would be served in allowing yet another amendment.

### D.     Fourteenth Amendment Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff can establish an equal protection claim by showing that the defendant has intentionally discriminated against him on the basis of the plaintiff's membership in a protected class.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. Cleburne, 473 U.S. at 440.  The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a compelling government interest.  Grutter v. Bollinger, 539 U.S. 306, 326 (2003).

Plaintiff alleges that he is Hispanic and that the Defendants T. Schwartz and John Doe # 5 are discriminating against him based on his race. (Compl. at 16). Race and ethnicity are suspect classes that trigger strict scrutiny. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race").

Plaintiff alleges that Defendants T. Schwartz and Doe # 5 based their decision to send Plaintiff to the SHU because Plaintiff is Hispanic and they assume as a result that the altercation he was involved in was gang related. (Compl. at 16.) . This is pled as mere conclusion and/or speculation on Plaintiff's part; neither is enough to state a cognizable claim. Iqbal, 129 S.Ct. at 1949-50. Plaintiff will be given one final opportunity to amend his equal protection claim and attempt to assert factual allegations, if any exist, which demonstrate that Defendants T. Schwartz and Doe # 5 acted with an intent or purpose to discriminate against him based upon his membership in a protected class. Lee, 250 F.3d at 686. Plaintiff's apparent belief that they did so is insufficient; he must set out the facts that support his belief so the Court can determine whether they are sufficient to state a claim under the law.

## V. CONCLUSION AND ORDER

Plaintiff's First Amended Complaint does not state a claim for relief under section 1983. The Court will grant Plaintiff one final opportunity to file an amended complaint addressing only his Equal Protection claims against Defendants T. Schwartz and Doe # 5. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-49. Plaintiff must set forth "sufficient factual matter . . . to 'state

a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "Second Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his First Amended Complaint, filed November 1, 2011;

2. Plaintiff's First Amended Complaint is dismissed for failure to state a claim upon which relief may be granted;

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated: December 5, 2011            /s/ *Michael J. Seng*
ci4d6                              UNITED STATES MAGISTRATE JUDGE